IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| DAVID MARTIN, <br><br> Plaintiff, <br><br> v. <br><br> MARYLAND DEPARTMENT OF NATURAL RESOURCES, ET AL., <br><br> Defendants. | Civil No. 24-0092-BAH |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff David Martin brought suit against the Maryland Department of Natural Resources ("DNR") and DNR Secretary Joshua Kurtz ("Secretary Kurtz") alleging racial discrimination, age discrimination, and violations of the First Amendment. ECF 1. Specifically, Plaintiff alleges claims against DNR for race discrimination in violation of 42 U.S.C. § 2000(e) (Title VII) and the Maryland Fair Employment Practices Act, Md. Code, State Gov't ("SG") § 20-602 et seq. ("MFEPA") (Count 1). Plaintiff also alleges age discrimination by DNR in violation of the MFEPA (Count 3). Plaintiff sues Secretary Kurtz in his "personal capacity" alleging that he violated 42 U.S.C. § 1983 by interfering with Plaintiff's rights under the First Amendment to the United States Constitution (Count 2). Pending before the Court is Defendants' motion to dismiss all claims (the "Motion"). ECF 10. Plaintiff filed an opposition. ECF 14. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendants' Motion is **GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND[2]

Plaintiff, a 76-year-old white man, was employed as a seasonal maintenance worker by DNR at Pocomoke River State Park in Maryland ("the Park"). ECF 1, at 2–3, ¶¶ 6–8. He had worked in the same role for many years and had consistently received positive feedback on his end-of-season evaluations. *Id.* ¶ 7. This action arises out of an incident that occurred at the Park on March 27, 2023. *Id.* at 3 ¶ 9. On that date, Plaintiff was engaged in helping his supervisor, Allen Holochwost, transport "a recently donated turkey mount" to the Park's Nature Center. *Id.* ¶ 10. Inside the Nature Center, Holochwost, who is a white man in his fifties, began a conversation with Allison Alvarado, a seasonal naturalist at the Park who is a Latina woman in her twenties. *Id.* ¶¶ 12–13. Plaintiff contends that while Holochwost and Alvarado were talking, he continued with preparations for building the display. *Id.* ¶ 14.

At some point, Plaintiff realized that the conversation between Holochwost and Alvarado had turned to "politically charged topics and had become heated." ECF 1, at 3 ¶ 15. Plaintiff reports that he exited the Nature Center in hopes that Holochwost would cease the conversation and follow him outside. *Id.* Nevertheless, after waiting for several minutes, Plaintiff determined that Holochwost would not be coming out, and returned to the Nature Center to find that the conversation "had become even more contentious." *Id.* ¶ 16. He reported hearing the words "white privilege," "racism," and "hate" being used, whereupon he again left the building and resumed performing other custodial duties without Holochwost. *Id.* at 4 ¶¶ 16–17. Plaintiff attests that he never participated in the conversation, nor attempted to do so. *Id.* ¶ 18.

---

[2] In evaluating the merits of a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Later the same day, Plaintiff returned with Holochwost to the Nature Center, where they encountered three park rangers speaking with Alvarado. ECF 1, at 4 ¶ 20. The group instructed Plaintiff and Holochwost to leave. *Id.* Thereafter, a park ranger named Curtis Dale, who Plaintiff identifies as the Park Services Manager at Pocomoke River State Park, "briefly met" with both Plaintiff and Holochwost and told them to "pack their things and go home." *Id.* ¶ 21. Dale informed the two that "he would let them know when they could return to work," though he "did not provide them with a reason why they were being sent home." *Id.* ¶ 21. Plaintiff indicates that Dale "had previously expressed to co-workers that [Plaintiff] is 'over the hill' and needed to be replaced by a younger worker." *Id.* ¶ 22. He further indicates that Alvarado was not sent home. *Id.* ¶ 23. After Plaintiff returned home, Dale subsequently sent out a staff-wide email "articulating laws and policies at the park regarding Equal Employment Opportunities, Bullying, Sexual Harassment, and Discrimination." *Id.* at 5 ¶ 24.

A week later, on March 30, 2023, Plaintiff returned to the Park in order to try to speak with Dale, as Plaintiff had received no updates on his situation. ECF 1, at 5 ¶ 25. Upon arrival at the Park, Plaintiff encountered a member of the staff who ordered him to leave, which Plaintiff says he did "without objection or complaint." *Id.* On April 4, Plaintiff emailed Dale to request an in-person meeting, though Dale responded that they could not have "further conversation" regarding the incident while an investigation was ongoing. *Id.* ¶ 26. This was the first time that Plaintiff learned a "formal investigation into the March 27th incident was in progress." *Id.* ¶ 27. The next week, on April 12, Plaintiff contacted Dale through email and regular mail to request additional updates and reiterated that he had not participated in the conversation between Holochwost and Alvarado and "had never previously engaged in any kind of workplace misconduct." *Id.* ¶ 28. Dale responded over email and stated that the investigation was an Equal Employment Opportunity

3

("EEO") issue and was still ongoing. *Id.* ¶ 29. Dale also noted that the investigation "had expanded to include alleged comments made by [Plaintiff] on March 21, 2023 and March 30, 2021." *Id.* at 6 ¶ 30. Plaintiff reports no knowledge of these two alleged incidents, and "is unaware of any record of a formal investigation or discipline concerning them." *Id.* ¶ 31.

On April 13, 2023, Plaintiff was contacted by a DNR representative for an interview regarding his recollection of the events of March 27, 2023, the day of the heated exchange between Alvarado and Holochwost. ECF 1, at 6 ¶ 32. During the interview, Plaintiff repeated that "he had not participated in the argument and had not said anything to either Mr. Holochwost or Ms. Alvarado." *Id.* He was not asked "any questions regarding the alleged March 21, 2023 and March 30, 2021 incidents." *Id.* On April 20, Plaintiff received a letter from Secretary Kurtz "informing him that pursuant to 'two separate EEO complaints . . . that [he] engaged in discrimination and harassment of other employees through the use of derogatory and offensive language and racial slurs,' . . . his employment was being terminated." *Id.* ¶ 33 (alterations in original). Plaintiff filed an appeal of his termination on April 27, 2023, and the appeal was denied on May 15, 2023. *Id.* ¶¶ 34–35.

Subsequent to his dismissal, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), "alleging racial and age discrimination." ECF 1, at 6 ¶ 38. On January 8, 2024, the Department of Justice issued a right-to-sue letter. *Id.* at 7 ¶ 38; *see also* ECF 3-1 (copy of the letter). Plaintiff also filed a claim with the Maryland State Treasurer under the Maryland Tort Claims Act. *Id.* at 6 ¶ 37; *see also* ECF 3, at 2–7 (copy of notice of claim submission). Finally, Plaintiff reports that his MFEPA claims are pending with the Maryland Commission for Civil Rights. *Id.* at 7 ¶ 39.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint." *Erickson,* 551 U.S. at 94; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.,* 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.,* 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

### A. MFEPA Claims against DNR

Plaintiff argues that he was terminated on the basis of his race and age in contravention of the MFEPA. *See* ECF 1, at 7, 9. The MFEPA prohibits employers from discriminating against employees on the basis of an individual's protected traits, including age, race, and sex. SG § 20-606(a). Defendant DNR argues that Plaintiff's MFEPA claims should be dismissed on the grounds that, as an instrumentality and agent of the Maryland state government, they are immune from suit

under the Eleventh Amendment. ECF 10-1, at 7. Defendant DNR further indicates that the state of Maryland explicitly did not consent to suit in federal court when it passed the MFEPA. *Id.*

The Eleventh Amendment to the Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." As interpreted by the Supreme Court, the principle of sovereign immunity articulated in the Eleventh Amendment establishes that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state," with such immunity extending to "state agents and state instrumentalities." *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

The Eleventh Amendment's bar to suit is "not absolute" but may be waived. *Feeney*, 495 U.S. at 304. Waiver may be effectuated through a state statute in the event that the statute "specif[ies] the State's intention to subject itself to suit in *federal court*." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (emphasis in original). "In other words, 'a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation.'" *Pense*, 926 F.3d at 101 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999)). A state is deemed to have waived its Eleventh Amendment immunity only when it has stated so "by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Atascadero*, 473 U.S. at 239–40 (internal citations omitted).

In his response to the Motion, Plaintiff did not address DNR's immunity argument. If a plaintiff fails to respond to an argument made in a motion to dismiss, the relevant claim may be

6

dismissed. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's argument that her claim should be dismissed], the plaintiff abandons any discriminatory discharge claim."). Even if Plaintiff had not failed to address Defendants' argument with respect to his MFEPA claims, these claims would still be subject to dismissal. Maryland has not waived its sovereign immunity as to MFEPA claims filed in in federal court as the statute does not explicitly "specify the State's intention to subject itself to suit in federal court" and so "cannot be read to waive the State's Eleventh Amendment immunity." *Pense*, 926 F.3d at 102 (quoting *Atascadero*, 473 U.S. at 241); *see also Mack v. Maryland Dep't of Hum. Servs.*, Civ. No. DLB-23-1577, 2024 WL 580672, at *4 (D. Md. Feb. 13, 2024) ("Maryland has not waived its immunity to MFEPA suits in *federal* court.") (emphasis in original). As an instrumentality and agent of state government, then, Defendant DNR is shielded from Plaintiff's MFEPA claims, at least in federal court. Accordingly, the Court will dismiss both the race and age discrimination claims brought pursuant to MFEPA.

## B.     Title VII claims

Plaintiff also brings a claim against Defendant DNR for racial discrimination in violation of Title VII. ECF 1, at 7. Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013); *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018).

Plaintiff's Title VII count appears to encompass a claim of discriminatory discharge.[3] *See* ECF 1, at 7 ¶ 45. "A plaintiff pursuing a claim under Title VII may either offer direct evidence of

---

[3] Defendant DNR interpreted the complaint to be alleging a disparate treatment claim as well. *See* ECF 1 at 7 ¶ 43. However, Plaintiff explicitly disclaims that his suit involves a disparate treatment claim in his response. ECF 14, at 5. Given Plaintiff's explicit concession, the Court will refrain from conducting a disparate treatment analysis. Moreover, Plaintiff's Title VII claim alleges that

7

discrimination or, using indirect evidence, [they] may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." *Coleman v. Whitley*, Civ. No. 21-1181, 2022 WL 16630570, *1 (4th Cir. Nov. 2, 2022). "At the motion to dismiss stage, however, Plaintiff is not required to set forth a prima facie case for each element; instead, he is required to set forth a plausible claim of discrimination." *Myers v. Montgomery Cnty.*, Md., Civ. No. 14-3054-DKC, 2015 WL 3795915, at *7 (D. Md. June 17, 2015). Thus, though Plaintiff may ultimately seek to prove his case by offering indirect evidence of discrimination, he need not, at this stage, allege "specific facts establishing a prima facie case of discrimination" pursuant to the *McDonnell Douglas* standard. *Westmoreland v. Prince George's Cnty.*, Civ. No. 09-2453, 2010 WL 3369169, at *3 (D. Md. Aug. 23, 2010) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002)). Plaintiff need only "plausibly allege" that he faced adverse employment action "*because of* [his] race, color, or sex to withstand a motion to dismiss." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015) (citing 42 U.S.C. § 2000e–2(a)(1) (emphasis in *McCleary-Evans*). Thus, the Court's inquiry here is limited to whether Plaintiff alleges facts that plausibly state a violation of Title VII "above a speculative level." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). Nevertheless, while a prima facie case is not required at this stage, "reference to the elements of a claim is helpful to assess whether the

---

the termination created "an abusive and hostile work environment." ECF 1, at 7 ¶ 44. As other courts in the Fourth Circuit have determined, however, "[d]iscrete acts, such as termination . . ., cannot alone form the basis of a hostile work environment claim." *Oroujian v. Delfin Grp. USA*, 57 F. Supp. 3d 544, 555 (D.S.C. 2014) (quoting *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 900 (11th Cir. 2014). As the only evidence Plaintiff offers in support of a possible hostile work environment claim is his termination, this claim cannot proceed.

8

plaintiff has stated a plausible claim." *Allgaier v. Microbiologics, Inc.*, Civ. No. 22-01900-ELH, 2023 WL 2837336, at *8 (D. Md. Apr. 7, 2023).

Plaintiff argues that his race "was clearly a motivating factor" in the decision to terminate his employment. ECF 1, at 7 ¶ 45. "One might reasonably infer that an employee was terminated because of [their] race if the employee alleges direct or indirect evidence of a discriminatory motive or if [they] plead[] a prima facie case of discrimination under *McDonnell Douglas*." *Felder v. Maximus, Inc.*, Civ. No. JKB-16-3517, 2017 WL 915003, at *2 (D. Md. Mar. 8, 2017). To plead a prima facie case of discrimination under *McDonnell Douglas*, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under similar circumstances." *Dallas v. Giant Food, Inc.*, 187 F. Supp. 2d 505, 511 (D. Md. 2002) (cleaned up).

Plaintiff does not allege direct evidence of discrimination.[4] Thus, the Court will evaluate whether he has alleged facts sufficient to support a plausible discrimination claim through the prism of the *McDonnell Douglas* factors. With respect to the first factor, Plaintiff has alleged that he is a member of a protected class as a white person.[5] *See* ECF 1, at 3 ¶ 8; *see also Lucas*, 835

---

[4] "Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Bandy v. City of Salem, Va.*, 59 F.4th 705, 711 (4th Cir. 2023) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc) (citation omitted), abrogated on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003)). As the Supreme Court has recognized, such evidence "is hard to come by." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989) (O'Connor, J., concurring in the judgment).

[5] Defendant DNR appears to argue that because Plaintiff is white, his claims should be analyzed differently than other claims brought under Title VII. ECF 10-1, at 8. "The Supreme Court has held that Title VII protects whites as well as minorities." *Lucas v. Dole*, 835 F.2d 532, 534 (4th Cir. 1987) (citing *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273 (1975)). Though "[t]here is a circuit split on the issue of whether a heightened burden applies to satisfy the protected class

F.2d at 534. Plaintiff also alleges facts to satisfy the second factor, as he claims that he "consistently received 'Excellent'" on his performance reviews and had "no recorded disciplinary issues." ECF 1, at 3 ¶ 7. As to the third factor, Plaintiff satisfactorily alleges that he was, in fact, terminated. *Id.* at 6 ¶ 33. With respect to the final factor, Plaintiff indicates that though he was terminated, a co-worker of a different race – Ms. Alvarado – was retained "despite engaging in conduct . . . substantially more severe than [Plaintiff's] passive role" in the March 27, 2023 incident. *Id.* at 7 ¶ 43. Plaintiff alleges that while Alvarado had a "heated" and "contentious" conversation with Holochwost, Plaintiff did not participate in the conversation but was terminated, while Alvarado was not. *Id.* at 3–4 ¶¶ 15–18. At the motion to dismiss stage, Plaintiff's allegation is sufficient to state a claim of discrimination under Title VII.

Defendant DNR argues that Plaintiff's complaint "acknowledges several facts that dispel any reasonable or logical inference of reverse race discrimination," including the investigation of "two separate EEO complaints . . . that [he] engaged in discrimination and harassment of other

---

element of a reverse race discrimination claim," *Presley v. Beaufort Cnty. Sch. Dist.*, No. CV 9:18-1945-BHH, 2021 WL 791206, at *4 (D.S.C. Mar. 2, 2021) (collecting cases), the Fourth Circuit has "expressly decline[d] to decide . . . whether a higher burden applies." *Lucas*, 835 F.2d at 534; *see also Weeks v. Union Camp Corp.*, 215 F.3d 1323, 2000 WL 727771, at *6 n.13 (4th Cir. June 7, 2000) (table decision) (noting that the Fourth Circuit "[had] not taken a position on [the] issue" of whether a higher burden applies to members of the majority who bring reverse discrimination claims). Judges in this district have generally analyzed reverse discrimination claims in line with other Title VII claims and have not applied a heightened standard. *See, e.g., Wethje v. CACI-ISS, Inc.*, Civ. No. 18-02424-PX, 2021 WL 718939, at *4 (D. Md. Feb. 24, 2021) (applying a traditional standard at the summary judgment stage and noting that "Title VII . . . appl[ies] to 'reverse discrimination' cases in which, as here, a member of the white majority alleges that she suffered adverse employment action on account of her race") (citing *Lucas*, 835 F.2d at 534); *Nasiatka v. England*, Civ. No. 03-900-RDB, 2005 WL 4631400, at *6 (D. Md. Mar. 10, 2005), aff'd, 174 F. App'x 797 (4th Cir. 2006) (applying traditional Title VII framework at the summary judgment stage to a claim of reverse discrimination); *Ciociola v. Baltimore City Bd. of Sch. Comm'rs*, Civ. No. 15-1451-CCB, 2016 WL 125597 (D. Md. Jan. 12, 2016) (applying traditional standard in analyzing a motion to dismiss a Title VII reverse discrimination claim raised by a white plaintiff). In line with the approach of other courts in this district, this Court evaluates Plaintiff's reverse discrimination cases as it would any Title VII claims.

10

employees through the use of derogatory and offensive language and racial slurs." ECF 10-1, at 10 (citing ECF 1, at 6 ¶ 14). DNR alleges that "[t]he only reasonable and logical inference based on these allegations is that DNR received complaints against Plaintiff, investigated the complaints, and made findings which warranted Plaintiff's termination[.]" *Id.* Assessing proof and drawing inferences is inappropriate at the motion to dismiss stage as courts "generally do not 'resolve contests surrounding the facts, the merits of a claim, or the applicability of a defense' through a Rule 12(b)(6) motion." *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, 598 F. Supp. 3d 348, 354 (D. Md. 2022) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, at the motion to dismiss stage, the Court's inquiry is limited to assessing whether Plaintiff's complaint "alleges facts that plausibly state a violation of Title VII above a speculative level." *Bing*, 959 F.3d at 617. Plaintiff has done so.

### C. First Amendment claim against Secretary Kurtz

Plaintiff also brings a claim against Secretary Kurtz in his "personal capacity," ECF 1, at 1,[6] for retaliation in violation of his First Amendment rights, pursuant to 42 U.S.C. § 1983, *id.* at 8 ¶¶ 47–51. "With regard to [a] retaliation claim, a public employer contravenes a public employee's First Amendment rights when it discharges '. . . [the] employee,' or when it makes decisions relating to 'promotion, transfer, recall, and hiring based on the exercise of' that employee's free speech rights.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 316 (4th Cir. 2006) (citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)).

---

[6] Secretary Kurtz states that Plaintiff failed "to specify whether Secretary Kurtz is sued in his official or individual capacity." ECF 10-1, at 10. However, the Court construes the reference to Secretary Kurtz being sued in his "personal capacity" to mean that he is being sued in in his individual, not official, capacity. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 483 n.5 (4th Cir. 2005) (noting that a First Amendment retaliation claim brought under § 1983 may be brought "against [] individual defendants in their individual capacities, and the Eleventh Amendment does not bar such a suit").

Secretary Kurtz first argues that Plaintiff fails to allege that he "actually engaged in some speech or expressive conduct." ECF 10-1, at 12. More specifically, because Plaintiff alleges that he did not participate in the March 27, 2023 conversation between Alvarado and Holochwost, he cannot claim he was discriminated against because he engaged in protected conduct. *Id.* ("In short, free speech retaliation requires some speech."). Secretary Kurtz alleges that "[t]here is absolutely no case law recognizing a cause of action for free speech retaliation in the absence of some speech or expressive conduct where the claim is based on a government actor's belief that the plaintiff engaged in such activity." *Id.*

Plaintiff points the Court to *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266 (2016), a case where the Supreme Court considered whether a city police department ran afoul of the First Amendment when it demoted an officer based on the mistaken assumption that he was involved in the campaign of a mayoral candidate. Ultimately, the *Heffernan* Court concluded that "the government's *reason* for demoting [the employee]," not the actual occurrence of the protected conduct at issue, is "what counts" for the purposes of First Amendment protection. *Heffernan*, 578 U.S. at 273 (emphasis added). The Court continued,

> When an employer demotes an employee out of a desire to prevent the employee from engaging in political activity that the First Amendment protects, the employee is entitled to challenge that unlawful action under the First Amendment and 42 U.S.C. § 1983–even if, as here, the employer makes a factual mistake about the employee's behavior.

*Id.* Determining that the First Amendment primarily focuses "upon the activity of the Government," rather than specifically enumerating the rights of citizens, the Court found that the operative analysis was whether the government "acted upon a constitutionally harmful policy" notwithstanding if the employee "did or did not in fact engage in political activity." *Id.* Thus, "even if Plaintiff did not engage in any protected speech . . . , Plaintiff may nevertheless bring a First Amendment retaliation claim" against Secretary Kurtz if he can establish that Kurtz "*believed*

12

he engaged in such speech." *Hood v. Marlboro Cnty.*, No. 417-cv-03403-DCC-MGB, 2019 WL 9242907, at *11 (D.S.C. Oct. 30, 2019) (emphasis in original); *see also Bird v. W. Valley City*, No. 2:12-CV-00903-EJF, 2017 WL 4326485, at *10 (D. Utah Sept. 28, 2017) ("The constitutional right at issue in this case is a public employee's right not to be fired for her real *or perceived* exercise of her First Amendment right[s].") (emphasis added). The Court therefore proceeds to consider whether Plaintiff has sufficiently alleged a First Amendment retaliation claim.

Plaintiff has alleged that he was terminated in retaliation for his participation in a "politically charged" conversation. ECF 1, at 3 ¶ 15. "In order to make out a First Amendment retaliation claim, a plaintiff must show that (1) he spoke as a citizen on a matter of public concern, rather than as an employee on a matter of personal interest; (2) the employee's interest in his expression outweighed the employer's 'interest in providing effective and efficient services to the public'; and (3) the employee's speech was a 'substantial factor' in the adverse employment action." *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 905 (4th Cir. 2024) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)).

"The first element of the test is the 'threshold question.'" *Massaro*, 95 F.4th at 905 (citing *Ridpath*, 447 F.3d at 316 n.26). Thus, the Court must examine the "'content, form, and context of a given statement' to discern whether it qualifies as expression on a matter of public concern." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). "An employee's expression 'involves a matter of public concern when it involves an issue of social, political, or other interest to a community.'" *Id.* at 906 (citing *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc)). As the Fourth Circuit has noted, "[a]t bottom, '[t]he focus is . . . upon whether the 'public' or the 'community' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a 'private' matter between employer and

13

employee.'" *Id.* (quoting *Berger v. Battaglia*, 779 F.2d 992, 999 (4th Cir. 1985)). However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

Here, Plaintiff has flatly claimed that his termination was connected to alleged comments on matters of political concern. Plaintiff has also sufficiently alleged that the conversation in question was not undertaken pursuant to his official duties, as he indicates he is a seasonal maintenance worker and the conversation took place incidental to workplace tasks. *See* ECF 1, at 3–4 ¶¶ 14 - 17 (noting that the conversation occurred while Plaintiff took measurements "in preparation for building a new habitat for a snapping turtle" and later waited outside in his vehicle). Plaintiff characterizes the conversation in question as "a political debate" touching on issues of public concern such as racism. ECF 1, at 8 ¶ 49-50. This kind of speech would meet the Fourth Circuit's definition of "a matter of public concern" because it is one that "addresses 'an issue of social, political, or other interest to a community.'" *Ridpath*, 447 F.3d at 316 (quoting *Urofsky*, 216 F.3d at 406–07).

Having determined that Plaintiff has sufficiently pled that the supposed speech in question dealt with a matter of public concern, the Court then turns to the second prong and considers whether his complaint has sufficiently alleged that his interest in First Amendment expression outweighed his employer's interest in the "efficient provision of public services." *Ridpath*, 447 F.3d at 317 (citing *McVey*, 157 F.3d at 277). This evaluation, often referred to as *Connick-Pickering* balancing after the Supreme Court's decisions in *Connick*, 461 U.S. at 138, and *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968), considers factors such as

> whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal

> relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed.

*Ridpath*, 447 F.3d at 317 (citing *McVey*, 157 F.3d at 278).

The Court is mindful of the fact that in its capacity as an employer, "the government . . . has far broader powers [to restrict speech] than does the government as sovereign." *Waters v. Churchill*, 511 U.S. 661, 671 (1994) (plurality opinion) (quoted in *Garcetti*, 547 U.S. at 418). "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti*, 547 U.S. at 418. Still, "public employees do not surrender all their First Amendment rights by reason of their employment." *Id.* at 417. Courts must balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick*, 461 U.S. at 142 (quoting *Pickering*, 391 U.S. at 568).

Secretary Kurtz argues that Plaintiff has failed to allege facts sufficient to establish that the "interest Plaintiff has in his association with [] Holochwost," or in the alleged speech,[7] outweighs DNR's interest in maintaining "discipline and ensur[ing] harmony as necessary to the operation and mission of its agencies.'" ECF 10-1, at 13 (citing *McVey*, 157 F.3d at 277). However, as applied to Plaintiff, many of the relevant factors necessary to make this determination are "still open for determination." *McVey*, 157 F. 3d. at 279. At this early stage in the litigation, the Court

---

[7] Secretary Kurtz raises overlapping arguments in seeking dismissal of both the free expression and free association claims. ECF 10-1, at 11 (arguing that free expression claims fail because Plaintiff didn't "engage in any protected speech"); 12 (arguing that *McVey* compels dismissal of Plaintiff's freedom of association claims). Since the above analysis applies to both claims, the Court will deny the Motion as to both the freedom of expression and freedom of association claims.

must read all factual allegations in a light most favorable to Plaintiff, drawing all inferences in his favor. *Nemet Chevrolet*, 591 F.3d at 253. Plaintiff has essentially alleged that his employer's interests in promoting efficiency is minimal by noting that another employee who allegedly participated in the heated exchange was not disciplined or terminated. ECF 1, at 8 ¶ 49 (alleging that Plaintiff and Holochwost were terminated while no action was taken against Alvarado, who was on the "other side" of that debate). Plaintiff has also alleged that his role in the debate had little to no impact on the performance of his duties since he did not even participate in the discussion and quickly "returned to the maintenance shop, and began performing other custodial duties." *Id.* at 4 ¶ 17. By contrast, Secretary Kurtz essentially alleges that, at minimum, the heated debate impaired harmony among workers, detrimentally impacted working relationships, and interfered with agency operations. *Cf. McVey*, 157 F.3d at 278. Though discovery might produce evidence that confirms just that, at this stage of the litigation, the Court cannot make such a determination. *See Love v. Hogan*, No. 21-CV-02029-JRR, 2022 WL 3369288, at *9 (D. Md. Aug. 15, 2022) ("Even considering the exhibits attached to the Motion, the court declines to consider whether Plaintiff meets the *Connick-Pickering* test at this stage, as substantially more evidence is required to undertake such an analysis, rendering it inappropriate for resolution at the 12(b)(6) stage.").

Finally, under the third prong of the First Amendment retaliation test, the Court considers whether the Plaintiff has sufficiently alleged that the alleged speech was a "substantial factor" in his termination. *Massaro*, 95 F.4th at 905. To satisfy this standard, a plaintiff "must show that '*but for*' the protected expression the [state actor] would not have taken the alleged retaliatory action." *Porter v. Bd. of Trustees of N. Carolina State Univ.*, 72 F.4th 573, 583 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) (quoting *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015)

(alterations in *Raub*) (emphasis in *Porter*)). Again, Plaintiff has supported his allegation that his perceived participation in a politically charged conversation, or his association with Holochwost, who did participate in the conversation, ultimately led to Plaintiff's termination. ECF 1, at 3-4 ¶¶ 15-17. Dismissal of Plaintiff's First Amendment claims is therefore not warranted at this time.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED** as to Plaintiff's MFEPA claims and **DENIED** as to Plaintiff's remaining claims.

A separate implementing Order will issue.

Dated: January 29, 2025                                    /s/
                                                           Brendan A. Hurson
                                                           United States District Judge